UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GENE CHARLES, | ) | Case No. 5:15 CV 1005 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| AIR ENTERPRISES, LLC., | ) | |
| | ) | |
| Defendant. | ) | **MEMORANDUM OPINION** |
| | ) | **ORDER** |

This matter is before the Court on Defendant Air Enterprises, LLC's ("Air Enterprises") motion for summary judgment on Plaintiff Gene Charles' ("Mr. Charles") claim of retaliation in violation of the Family and Medical Leave Act ("FMLA"). For the reasons that follow, Air Enterprises' motion (Doc. #23) is GRANTED.

**I.  FACTS**

Air Enterprises is a Delaware limited liability company with its place of business in Akron, Ohio. Air Enterprises manufactures air handling units and heat recovery systems. Air Enterprises has, from time to time, experienced economic difficulties. In 2004, economic difficulties forced Air Enterprises' predecessor company (Air Enterprises, Inc.) to file for Chapter 11 Bankruptcy protection in the Northern District of Ohio. (DePriest Affidavit, Doc. #23-2 at ¶ 1.) The entity that emerged from bankruptcy under new ownership is Defendant in this case.

At all times described herein, Air Enterprises has maintained a FMLA policy. FMLA usage at Air Enterprises appears to be common. (*Id*. at ¶ 5.) Air Enterprises had an average

1

of 145 employees from 2006 to 2015. Of those individuals, at least 60 employees of Air Enterprises who had requested or taken FMLA were still employed by Air Enterprises when Mr. Charles filed this suit. (*Id.* at ¶ 5.)

Mr. Charles claims that Air Enterprises terminated his employment in January 2015 in retaliation for his FMLA leave request in October 2014.  Mr. Charles testified that he began working for Air Enterprises prior to the 2004 bankruptcy, and has held a variety of positions within the company.  He was a Safety and Facility Manager at the time of his termination. (Charles Transcript, Doc. #24 at p. 18.)

Mr. Charles first requested and took FMLA leave several times during the 1990s. (*Id.* at p. 9, 16.)  After the bankruptcy, Mr. Charles initiated, but did not complete, a FMLA leave request in November 2006. (DePriest Affidavit, Doc. #23-2 at ¶ 7.)   Mr. Charles completed a FMLA leave request in 2009. (Charles Transcript, Doc. #24 at p. 10-11; DePriest Affidavit, Doc. #23-2 at ¶ 8.) Air Enterprises granted Mr. Charles the leave he requested.  Although Mr. Charles was approved for FMLA leave, which according to company policy was uncompensated, Mr. Charles received full pay for the entire duration of his leave. (Charles Transcript, Doc. #24 at p. 11; DePriest Affidavit, Doc. #23-2 at ¶ 8.)  When Mr. Charles returned from this leave in late November 2009 he was reinstated with the same rate of pay, benefits, job duties, and working conditions that he had prior to his leave.  (Charles Transcript, Doc. #24 at p. 12; DePriest Affidavit, Doc. #23-2 at ¶ 8.)

In late 2013 Air Enterprises' senior management determined that a reduction in force would be necessary due to economic conditions.  At that time 11 employees, including a Safety Manager, were identified for reduction.  One of the 11 employees let go at that time had previously used FMLA leave, the remaining 10 had not. (DePriest Affidavit, Doc. #23-2 at ¶

14.) Mr. Charles was not let go as a part of this reduction in force.

In April 2014 Mr. Charles initiated a FMLA leave request and received paperwork. He did not complete the leave request at that time. Later, in August 2014, management initiated a further reduction in force, which included four employees, none of whom had used FMLA leave during their employment.

In October 2014 Mr. Charles submitted paperwork requesting FMLA leave. Air Enterprises approved his request the following day. Mr. Charles did not use any of his approved leave.

During a February 2016 deposition, Mr. Charles testified that his supervisor, Gary Wolny, told him that taking the leave would be "no problem." Specifically, he testified:

> Q. And you told your boss, I'm taking time off for FMLA, I want it to be FMLA?
> A. Correct.
> Q. What did your boss say?
> A. No problem.
> ***
> Q. Who was your boss you had this conversation with?
> A. Gary.
> Q. Gary Wolny?
> A. Correct.
> Q. W O L N Y?
> A. Correct.
> Q. So you went to Gary, I need time for a colonoscopy, I want to take FMLA, is that what happened?
> A. Correct.
> Q. And Gary's response was no problem?
> A. Correct.

(Charles Transcript, Doc. #24 at 15.)

Likewise, Mr. Wolny testified, "I told [Mr. Charles] to take the time that he needed, just let me know when he was not going to be in the office." (Wolny Transcript, Doc. #28-2 at p. 5.) Mr. Wolny further explained that a phone call or email would be sufficient so he would be aware when

3

Mr. Charles would not be in the facility so that it wasn't necessary that he be notified ahead of time. *Id.*

In an affidavit offered in support of Mr. Charles' opposition to Air Enterprises' Motion for Summary Judgment, Mr. Charles contradicted his earlier deposition testimony that Mr. Wolny told him the FMLA leave would be "no problem."  In the affidavit, Mr. Charles asserted that Mr. Wolny told him that taking leave without notice or scheduling would indeed be a problem.  (Charles Affidavit, Doc. # 27-2.)

In November 2014 senior management was directed to evaluate departments for an additional reduction in force.  Air Enterprises decided to delay the general reduction until January 2015.  Nonetheless, the CEO and Vice President of Sales were terminated in December 2014. (DePriest Affidavit, Doc. #23-2 at ¶ 19.)  The January reduction involved an additional 21 employees including Mr. Charles.  Three of the 25 individuals let go in December 2014 and January 2015, including Mr. Charles, had previously used FMLA leave.

When asked about the decision to include Mr. Charles in the reduction in force, Mr. Wolny testified:

> Q. During that period, what was the analysis that you did as to who would or would not be terminated?
> A. I went through the dollar amount and then the corresponding number of labor hours that we needed to support the business with based upon the forecast, then I backed into the number of people that I could support it with and then the excess people that I could release and then still maintain the business.
> Q. How was Gene included in that?
> A. From the dollar amount.
> Q. So Gene was making too much?
> A. No.  From his skill set that I was able to replace with current staff that we had in the operations, I was able to release Gene because of his safety involvement and his maintenance and building involved [sic], I could pick up with three other people.

(Wolny Transcript, Doc. #28-2 at p. 6.)  No new employees were hired to replace Mr. Charles.  Rather, his job duties were distributed among existing employees.

In addition to the reduction in force, Air Enterprises attempted to improve its financial position by taking further measures.  These measures included: closing a 170,000 square foot facility; cutting the salaries of some employees; reducing the work week of shop employees from five to three days; and continuing a suspension of the company's 401(k) match benefit.  (DePriest Affidavit, Doc. #23-2 at ¶ 23.)

During his deposition, Mr. Charles was asked to testify to "all the reasons why you feel there's a link between your October, 2014 FMLA request and your termination."  In response, Mr. Charles testified that the link was his "speculation."  (Charles Transcript, Doc. #24 at p.16.)

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element

5

essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)).  The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact.  *Fulson v. City of Columbus,* 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts.  *Id*.

**III.    LAW AND ANALYSIS**

Mr. Charles makes his retaliation claim under 29 U.S.C. § 2615(a)(2), which provides: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  The Sixth Circuit Court of Appeals "recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory . . . and (2) the 'retaliation' or 'discrimination' theory arising under 29 U.S.C. § 2615(a)(2)."  *Hoge v. Honda of America Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).  To establish an FMLA discrimination claim, as Mr. Charles attempts to do here, Mr. Charles must demonstrate that (1) he was engaged in an activity protected by the FMLA: (2) his employer knew that he was exercising his rights under the FMLA; (3) the employer took an employment action adverse to him; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir.2003).  Plaintiff "bears the burden of demonstrating a causal connection."  *Killian v. Yorozu Automotive*

*Tennessee, Inc.*, 454 F.3d 549, 556 (6th Cir. 2006).  To demonstrate a causal connection, Plaintiff must show that his "employer's stated reason for terminating [him] was pretextual and that the true reason for [his] dismissal was [his] medical leave." *Id.*

The parties do not dispute that Mr. Charles was a covered employee under the FMLA who made intermittent leave requests pursuant to 29 U.S.C. § 2612(b), or that Mr. Charles' requests were granted by Air Enterprises.  The parties agree that when he was terminated, Mr. Charles had not yet taken any of his approved leave pursuant to the request made in October 2014.  Moreover, Mr. Charles concedes Air Enterprises' description of corporate financial difficulties, adverse market conditions, and a series of reductions in force.

In support of his retaliation claim, Mr. Charles offers only (1) hearsay statements suggesting that he was not originally included in the January reduction in force, and (2) his own affidavit testimony that his supervisor told him unscheduled leave would be "a problem."  With regard to affidavits, Rule 56(e) requires that material submitted in support of, or in opposition to, motions for summary judgment include facts based on personal knowledge, and that personal knowledge "must be evident from the affidavit." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F.Supp.2d 948, 956 (S.D. Ohio 2000). Affidavits at the summary judgment stage may not rely upon inadmissible hearsay because inadmissible hearsay "cannot create a genuine issue of material fact." *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997).  Without more, self-serving affidavits are not enough to create an issue of fact sufficient to survive summary judgment. *Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999) citing *Anderson*, 477 U.S. at 251 and *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995).

The affidavit of Brian Swiger offered by Mr. Charles purports to reflect statements made by an out of court declarant to another out of court declarant, who then relayed the statements to

the affiant. As such the contents are inadmissible hearsay not subject to any hearsay exception. Inadmissible hearsay evidence cannot be considered to overcome summary judgment. *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). Thus, Mr. Swiger's affidavit does not create a material issue of fact for a jury to decide.

Likewise, Mr. Charles' affidavit does not create a genuine issue of material fact that would preclude summary judgment. The Sixth Circuit has established that a party may not create an issue of fact by submitting an affidavit to oppose summary judgment that contradicts prior sworn deposition testimony. *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 459 (6th Cir. 1986). That is precisely what Mr. Charles has attempted to do here. In deposition, Mr. Charles testified that his supervisor, Mr. Wolny, told him that his FMLA leave would be "no problem." Then, in his affidavit submitted opposition to summary judgment, Mr. Charles contradicted his deposition testimony, claiming that Mr. Wolny told him that unscheduled FMLA would be a problem. This contradiction between Mr. Charles' former deposition testimony and later affidavit is insufficient to create an issue of material fact that would defeat summary judgment. *Id*.

Viewing the record as a whole, Air Enterprises has demonstrated that Mr. Charles was let go as part of a reduction in force. The record demonstrates that: (1) the vice president of sales and the CEO, both members of senior management, were included with at least one other manager in reductions in force; (2) a total of thirty-eight positions were eliminated in four rounds of reduction; (3) Mr. Charles' position was eliminated when he was let go; (4) Mr. Charles' former job duties distributed among remaining employees; and (5) the facility Mr. Charles managed closed among other cost-cutting measures. Air Enterprises has further offered testimony demonstrating that many employees, including Mr. Charles, had received and returned from FMLA leave without

8

adverse consequence, and that employees who had never used leave were included in the various reductions in force.

Mr. Charles, on the other hand, has not provided any evidence apart from his "speculation" that his termination as part of reductions in force was pretext, and that the real motivation was retaliation for his use of FMLA leave.  Thus, even when the record is construed in a light most favorable to Mr. Charles, he has failed to discharge his burden as the non-moving party to produce credible material evidence contemplated by Civ. R. 56 that demonstrates the "conflict of material fact" necessary to require that his claim be resolved by a jury.  *Cox*, 53 F.3d at 150.  Accordingly, the Court grants summary judgment in favor of Air Enterprises.

**IV.  CONCLUSION**

For the reasons set forth herein, Air Enterprises' motion for summary judgment (Doc. # 23) is GRANTED.

**IT IS SO ORDERED.**

    _s/John R. Adams_____
    JOHN R. ADAMS
    UNITED STATES DISTRICT JUDGE

**DATED**: MARCH 22, 2017